## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CITRIX SYSTEMS, INC., DAVID HENSHALL, ROBERT M. CALDERONI, ARLEN SHENKMAN, PJ HOUGH, and MARK SCHMITZ, <br><br> Defendants. | Civil Action No. <br><br> CLASS ACTION <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff City of Hollywood Police Officers' Retirement System ("Hollywood Police" or "Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by Citrix Systems, Inc. ("Citrix" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued and disseminated by the Company; (iii) analyst and media reports concerning Citrix; (iv) transcripts of Citrix investor conference calls; and (v) other public information regarding the Company.

## INTRODUCTION

1. Plaintiff brings this securities class action on behalf of all persons or entities that purchased shares of Citrix common stock between January 22, 2020 and October 6, 2021, inclusive (the "Class Period"). The claims asserted herein are alleged against Citrix and certain of the

Company's current and former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.      Headquartered in Fort Lauderdale, Florida, Citrix is a software company that provides users with secure remote access to computer networks.  Historically, Citrix's technology was located "on-premise," meaning it was installed directly onto computer servers owned and operated by its customers.  The technology was purchased by seat through a perpetual license model, meaning a purchaser would pay upfront for lifetime access and support for each user.

3.      In 2019, prior to the Class Period, Citrix announced that it would be shifting from a perpetual license model to a subscription license payment model, as well as transitioning from a software solution previously provided on-premise to cloud-based services.

4.      Early in the Class Period, in response to COVID-19 and the shift to remote work, Citrix experienced a boost in sales.  That boost was driven in part by the Company's decision to offer a shorter duration, on-premise license (the "Business Continuity Licenses").  The Company offered the Business Continuity Licenses at a discounted rate and expected that most customers would transition to cloud accounts after the one-year license expired.

5.      Throughout the Class Period, the Company claimed that the transition to a cloud-based product and to a subscription pricing model was going smoothly and successfully.

6.      The truth began to emerge on April 29, 2021, when Citrix announced lower than expected license conversions of the Business Continuity Licenses.  Specifically, the Company explained that the Business Continuity Licenses did not transition to long-term cloud contracts as expected.  Instead, many customers "rolled to another short-term" on-premise license, citing the ongoing COVID-19 pandemic.  These disclosures caused the Company's stock to decline 7.6%,

from $138.51 per share to $128.02 per share.  However, the Company continued to assure investors that this was a "very isolated item" and that the "transition to the cloud is progressing well."

7.      On July 29, 2021, the Company reported that, despite prior assurances, the transition to cloud was not as successful as the Company had led investors to believe.  Specifically, Citrix cited "the challenge associated with transitioning the business to [cloud] and the need to evolve our sales strategy to deliver more predictable results."  Further, Citrix announced a major restructuring of its sales leadership in order to "enhance [its] focus on" cloud migration.  According to the Company, these changes were "significant and may cause short-term disruption before yielding tangible results."  These disclosures caused the Company's stock to decline 13.6%, from $114.55 per share to $99.00 per share.

8.      Then, on October 6, 2021, after markets closed, the Company announced that Defendant Henshall had stepped down as President and Chief Executive Officer ("CEO") of Citrix. This disclosure caused the Company's stock to decline 7.2% over the next two days, from $105.96 per share to $98.32 per share.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Citrix maintains its headquarters in Fort Lauderdale, Florida, which is situated in this District, and conducts substantial business in this District.  Many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were

issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A. Plaintiff

11.     Plaintiff Hollywood Police is a pension plan providing benefits to eligible police officers in Hollywood, Florida. As indicated on the certification submitted herewith, Hollywood Police purchased Citrix common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B. Defendants

12.     Defendant Citrix is incorporated in Delaware and maintains its corporate headquarters at 851 West Cypress Creek Road, Fort Lauderdale, Florida. The Company's common stock trades on NASDAQ under the ticker symbol "CTXS." As of November 1, 2021, Citrix had over 124 million shares of common stock outstanding, owned by hundreds or thousands of investors.

13.     Defendant David Henshall ("Henshall") served as Citrix's President and CEO from July 2017 until October 6, 2021.

14.     Defendant Robert M. Calderoni ("Calderoni") has served as Chairman of Citrix's Board of Directors since December 2018. He has also served as Citrix's interim CEO and President since October 6, 2021.

15.     Defendant Arlen Shenkman ("Shenkman") has served as Citrix's Chief Financial Officer and Executive Vice President since September 2019.

16.     Defendant PJ Hough ("Hough") served as Citrix's Chief Product Officer from July

2017 until November 15, 2021, and Executive Vice President from November 2018 until November 15, 2021.

17. Defendant Mark Schmitz ("Schmitz") has served as Citrix's Chief Operating Officer ("COO") and Executive Vice President since August 2019.

18. Defendants Henshall, Calderoni, Shenkman, Hough, and Schmitz are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Citrix, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

19. Prior to the transition described herein, Citrix clients installed the Company's software products directly onto computer servers they owned and operated, with such products referred to as "on premise." Customers paid Citrix a perpetual license, meaning they paid upfront for lifetime access and support, with the cost of the licenses based on the number of users each customer supported.

20. Before the Class Period, in 2019, Citrix began a two-pronged transition of its business model. First, the Company began to transfer its software platform from the on-premise model to a cloud-based model. In the cloud model, Citrix hosted its software on servers owned

and maintained by Citrix, rather than on customers' servers. Second, Citrix transitioned to a subscription-based payment system: instead of paying once per user for a license, Citrix's subscription model required customers to pay a yearly subscription cost.

21. In Spring 2020 the need for secure remote access to computer networks skyrocketed as a result of the COVID-19 pandemic. In response, Citrix offered special one-year Business Continuity Licenses to existing customers. These licenses were short-term, on-premise contracts that allowed the Company to "quickly help [its] customers with their immediate business needs." Importantly, the Business Continuity Licenses offered a 50% discount for on-premise licenses, while salespeople were not permitted to offer discounts on cloud licenses. The Company expected that after the one-year term expired, many of the Business Continuity Licenses would transition to cloud-based subscription accounts.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING
STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS**

22. The Class Period begins on January 22, 2020, when Citrix held its fourth quarter 2020 earnings conference call. On that call, Defendant Henshall announced that Citrix's "model transition continues to progress really well" and was "coming ahead of the accelerated plan." In addition, Defendant Henshall stated that the increase of subscriptions "reflect[ed] the customer confidence in our strategy, roadmap, and our ability to execute on where that market's going." Finally, Defendant Henshall stated that Citrix's cloud product "unlocks a lot of new capabilities that are really only available as a service," and provides "lots of tools and services to optimize" the clients' experience.

23. On February 11, 2020, Defendant Henshall presented at the Goldman Sachs Technology & Internet Conference. During the conference, Defendant Henshall stated that the cloud provided customers with "access to so many net new things that are only available as cloud."

6

24.     On April 16, 2020, Citrix filed a definitive proxy with the SEC on Form DEF 14A. That filing included a letter to shareholders from the Chairman of the Board, Defendant Calderoni, in which he wrote that "Citrix gained significant momentum in its business transition to a subscription-based business."

25.     On May 12, 2020, Defendant Shenkman presented at the J.P. Morgan Virtual TMC Conference.   During the conference, Defendant Shenkman stated that converting to the cloud "helps [customers] get additional technical benefit."

26.     On July 23, 2020, Citrix published its earnings letter for the second quarter of 2020. That letter, which Citrix also filed with the SEC on Form 8-K, reported that the Company's "subscription model transition regained momentum in the second quarter."   In addition, the Company explained that "the subscription model transition serves as a bridge from legacy on-premises perpetual license and maintenance to the cloud."

27.     That same day, Citrix held its second quarter 2020 earnings conference call.   On that call, Defendant Henshall stated that "the subscription model transition is progressing really well," and that the Company had "seen great acceleration" and that Citrix was "very well positioned in the long-term."

28.     On July 31, 2020, Citrix filed its quarterly report with the SEC on Form 10-Q, reporting the Company's financial and operating results for the second quarter ended June 30, 2020, where Citrix reported that its "subscription model transition regained momentum."

29.     On September 9, 2020, Defendant Henshall presented at the Citi Global Technology Conference.   During the conference, in response to an analyst's statement that the Company had "seen very good growth in both the [] subscription as well as the Citrix Cloud," Defendant Henshall confirmed that the Company was "making great progress" with the model

transition.

30.     On October 22, 2020, Citrix held its third quarter 2020 earnings conference call. On that call, when asked by an analyst for an update on the subscription cloud transition, Defendant Henshall responded that "in terms of the overall execution, it's going really well."

31.     On November 17, 2020, Defendant Hough presented at the RBC Capital Markets Global Technology, Internet, Media and Telecommunications Conference.  During the conference, Defendant Hough discussed the value proposition of Citrix cloud service.  Specifically, he stated that, by moving to the cloud, customers "get access to a world of services that [they] previously didn't."

32.     On December 7, 2020, Defendant Schmitz presented at the Raymond James Technology Investors Conference.  During the conference, Defendant Schmitz stated that the Company's long-term vision for the Business Continuity Licenses "isn't necessarily to just capture these licenses, and make sure that they move forward for another year.  It's really about transitioning the customer to be on a preferred platform, which in this case is our Cloud platform." Defendant Schmitz also explained that the cloud "offers [customers] a greater access to innovation, highly valued capabilities that are not available on-premise."  Defendant Schmitz went on to say, "customers appetite for cloud migration is actually higher than it was in the start of the pandemic" and that "the sentiment is quite positive on cloud migration."

33.     On January 19, 2021, Citrix published its earnings letter for the fourth quarter of 2020.  That letter, which Citrix also filed with the SEC on Form 8-K, reported "strong on-going demand for the Citrix workspace and an acceleration of our customers adopting Citrix Cloud to manage their workspace environments." The letter also highlighted "an acceleration in the transition of our installed base to the cloud."

34.     That same day, Citrix held its fourth quarter 2020 earnings conference call.  On that call, Defendant Henshall stated that the Company's strong growth was driven by its "installed base, moving more aggressively to Citrix Cloud."  In addition, Defendant Henshall explained that "with the large majority of our business on a subscription model, [Citrix is] focused on moving even faster in our transition to the cloud."  Lastly, Defendant Henshall stated that Citrix had "been really focused over the back half of the year migrating the installed base to cloud.  We've seen great success with that."

35.     On April 16, 2021, Citrix filed a definitive proxy with the SEC on Form DEF 14A, reporting that "as we enter fiscal year 2021 with a portion of our subscription model transition complete, we continue to focus on transitioning our customers to the cloud."

36.     The statements set forth above in ¶¶ 22-35 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose that the cloud product was substantially similar to the on-premise offering, and that the Company was experiencing significant challenges transitioning customers from on-premise to the cloud.

**THE TRUTH EMERGES**

37.     On April 29, 2021, the Company held its first quarter 2021 earnings conference call.  There, Defendant Henshall disclosed lower than expected conversions of the Business Continuity Licenses.  Specifically, Defendant Henshall explained that the Business Continuity Licenses did not transition to long-term cloud contracts as expected.  Instead, many customers "rolled into another short-term" on-premise license, citing the ongoing COVID-19 pandemic. These disclosures caused the Company's stock to decline 7.6%, from $138.51 per share to $128.02

per share.

38.     Then, on July 29, 2021, Citrix published its earnings letter for the second quarter of 2021.  That letter, which Citrix also filed with the SEC on Form 8-K, reported that, despite prior assurances, the transition to cloud was not as successful as the Company had led investors to believe.  Specifically, Defendant Henshall wrote that "the challenge associated with transitioning the business to [cloud] and the need to evolve our sales strategy to deliver more predictable results."  Further, Citrix announced a major restructuring of the Company's sales leadership.  According to Defendant Henshall, these changes were "significant and may cause short-term disruption before yielding tangible results."

39.     On the same day, Citrix held its second quarter 2021 earnings conference call.  On that call, an analyst pointed out that the issues Citrix was facing "sound like they kind of evolved over time" and asked whether the announcement was a "culmination" or "realization on the management team that something needs to change?"  Defendant Henshall responded, "I think that's fair. . . . We've just had problems with really managing and accurately forecasting a lot of these new business areas."  These disclosures caused the Company's stock to decline 13.6%, from $114.55 per share to $99.00 per share.

40.     Then, on October 6, 2021, after the markets closed, Citrix published a press release on *Business Wire*.  In that press release, the Company announced that Defendant Henshall stepped down as president and CEO of Citrix.  This disclosure caused the Company's stock to decline 7.2% over the next two days, from $105.96 per share to $98.32 per share.

41.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

42.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Citrix common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Citrix stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Citrix stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Citrix during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Citrix and their families and affiliates.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of November 1, 2021, Citrix had over 124 million shares of common stock outstanding, owned by hundreds or thousands of investors.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Citrix common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

46.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

47.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

49.     Citrix's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

50.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement

was false or misleading and the statement was authorized and/or approved by an executive officer of Citrix who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

### PRESUMPTION OF RELIANCE

51.     At all relevant times, the market for Citrix common stock was an efficient market for the following reasons, among others:

(a)     Citrix common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Citrix filed periodic public reports with the SEC and NASDAQ;

(c)     Citrix regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Citrix was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for Citrix common stock promptly digested current information regarding Citrix from all publicly available sources and reflected such

information in the price of Citrix common stock.  Under these circumstances, all purchasers of Citrix common stock during the Class Period suffered similar injury through their purchase of Citrix common stock at artificially inflated prices and the presumption of reliance applies.

53.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Citrix's business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's transition to a subscription-driven, cloud-based model and the significant restructuring required to address the shortfall, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Citrix common stock at artificially inflated prices.

56.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made

untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Citrix common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

58.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Citrix's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

60.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Citrix common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Citrix common stock had been artificially inflated by Defendants' fraudulent course of conduct.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

62.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

63.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Citrix within the meaning of Section 20(a) of the Exchange Act.   By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Citrix, the Individual Defendants had the power and ability to control the actions of Citrix and its employees.   By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

65.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

66.      Plaintiff demands a trial by jury.

DATED: November 19, 2021

Respectfully submitted,

**KLAUSNER KAUFMAN JENSEN**
**& LEVINSON**

*/s/ Robert D. Klausner*
Robert D. Klausner
Florida Bar Number 244082
Stuart A. Kaufman
Florida Bar Number 979211
7080 NW 4th Street
Plantation, FL 33317
Tel:     (954) 916-1202
Fax:     (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

Hannah Ross, *pro hac vice* forthcoming
Avi Josefson, *pro hac vice* forthcoming
Scott R. Foglietta, *pro hac vice* forthcoming
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 554-1400
Fax:     (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scottfoglietta@blbglaw.com

*Counsel for City of Hollywood Police Officers'*
*Retirement System*

## CERTIFICATION PURSUANT TO
## <u>THE FEDERAL SECURITIES LAWS</u>

I, David Strauss, on behalf of the City of Hollywood Police Officers' Retirement System ("Hollywood Police"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hollywood Police. I have reviewed the complaint with our legal counsel. Based on legal counsel's knowledge and advice, Hollywood Police has authorized the filing of the complaint.

2. Hollywood Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hollywood Police is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hollywood Police's transactions in the Citrix Systems, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hollywood Police has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *City of Hollywood Police Officers' Retirement System v. Henry Schein Inc.,*
    No. 19-cv-05530 (E.D.N.Y.)

6. Hollywood Police has sought to serve as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *City of Hollywood Police Officers' Retirement System v. The Kraft Heinz Co.,*
    No. 20-cv-1970 (N.D. Ill.)

7. Hollywood Police will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of November, 2021.

_____

David Strauss
Chairman
*City of Hollywood Police Officers' Retirement System*

**City of Hollywood Police Officers' Retirement System**
**Transactions in Citrix Systems, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/24/2020 | 1,170 | 142.5231 |
| Purchase | 7/30/2020 | 922 | 141.3350 |
| Purchase | 2/23/2021 | 390 | 136.6313 |
| Purchase | 9/21/2021 | 880 | 110.7844 |
| | | | |
| Sale | 11/2/2020 | (2,470) | 113.7219 |
| Sale | 7/29/2021 | (1,381) | 97.1552 |