UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-62380-CIV-SINGHAL

CITY OF HOLLYWOOD POLICE
OFFICERS' RETIREMENT SYSTEM,
on behalf of itself and all others similarly
situated,

    Plaintiff,

v.

CITRIX SYSTEMS, INC., DAVID
HENSHALL, ROBERT M. CALDERONI,
ARLEN SHENKMAN, PJ HOUGH, and
MARK SCHMITZ,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon the Florida Pension Funds' ("FPF") Motion for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel ("FPF Motion") (DE [17]), and the Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme's ("MPSB") Motion for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel ("MPSB Motion") (DE [18]), both filed on January 18, 2022. FPF filed an opposition brief to the MPSB Motion on February 1, 2022 ("FPF Opposition") (DE [23]). MPSB filed an opposition brief to the FPF Motion on February 1, 2022 ("MPSB Opposition") (DE [24]). FPF filed a reply in support of the FPF Motion on February 8, 2022 ("FPF Reply") (DE [46]). MPSB filed a reply in support of the MPSB Motion on February 8, 2022 ("MPSB Reply") (DE [47]).

### I. LEGAL STANDARD

Under the Private Securities Litigation Reform Act of 1995 (PSLRA), a court must appoint as lead plaintiff the member(s) of the putative class determined to be "most

capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4a(3)(B)(i). The PLSRA instructs courts to adopt a presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) "filed the complaint or made a motion in response or a notice [to serve as lead plaintiff]," (2) "has the largest financial interest in the relief sought by the class" as determined by the court, and (3) "otherwise satisfies the requirements of [Fed. R. Civ. P. 23]." *Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption may only be rebutted upon a showing that "the presumptively most adequate plaintiff" (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

## II. DISCUSSION

The Parties do not dispute whether either one satisfies the first requirement of 15 U.S.C. § 78u-4a(3)(B)(i)(I). Therefore, the Court must assess (1) whether FPF or MPSB has the largest financial interest in the relief sought by the class, and (2) whether that party can satisfy the requirements of Fed. R. Civ. P. 23. The Court will then determine whether the "most adequate plaintiff" presumption can be rebutted.

### A. Largest Financial Interest

MPSB asserts that it possesses the largest financial interest in the litigation. *See* MPSB Reply, at 1. MPSB claims to have an interest of $5.5 million (FIFO) or $5.7 million (LIFO). *Id. See* MPSB Motion, at 6. MPSB states that it purchased 151,994 shares of Citrix common stock during the Class Period and suffered more than $5.75 million in losses as a result of defendants' alleged violations of federal securities laws. *Id.*; *see* (DE [19-4]).

FPF responds arguing that it has the largest financial interest because MPSB's

financial information is not credible. Specifically, FPF states that MPSB appears to have traded in Citrix stocks through other entities because its Declaration reveals that its members "own several companies which act as their investing entities." FPF Opposition, at 7. FPF asserts that, "[b]ecause the Citrix investments of these 'several companies' were not included in [MPSB's] Certifications, it is impossible to know whether [MPSB] is withholding other relevant trading that impacts its financial interest here. That is, [MPSB] may be claiming losses that it lacks standing to pursue . . . ." *Id.* FPF argues, in essence, that because MPSB owns "several companies which act as their investing entities," MPSB might have additional Citrix trading, done by these separately owned investing entities, that it has failed to disclose.

MPSB replies by confirming that it does in fact possess "legal title and ownership of the Citrix securities at issue." *See* MPSB Reply, at 2. MPSB further asserts that its financial interest is "not conflated with transactions by third parties." *Id.* at 4; *see* (DE [18], at 6) ("[MPSB] ha[s] not conflated their own financial interest with the Citrix transactions of any third-party entities in which [MPSB] may have invested."). Moreover, MPSB's Head of Investment Operations Paul McCormick[1] executed a second affidavit confirming that the identified Citrix shares were held in MPSB's name and MPSB held legal title to them. *See* MPSB Reply, at 5. And McCormick affirmed that the identified Citrix shares did not include any Citrix shares owned by pooled funds or other investing entities. *Id.* at 6.

To determine which plaintiff has the largest financial interest, the Court must consider (1) the number of shares purchased during the class period, (2) the amount of the investment expended during the class period, and (3) the estimated losses incurred. *In re January 2021 Short Squeeze Trading Litigation*, 2021 WL 4840857, at *2 (S.D. Fla.

---

[1] Paul McCormick is the Head of Investment Operations of Coal Pension Trustees Services Limited, which serves as the joint executive of MPSB.

Oct. 15, 2021) (citation omitted). Courts generally accord the third factor the greatest weight. *Id.* (citations omitted). The Court agrees with MPSB. The affidavit of McCormick makes clear that MPSB directly owns the identified Citrix shares, giving MPSB the greatest estimated loss incurred ($5.5–5.7 million) of the plaintiffs. The parties do not dispute that, if this number is true, MPSB has the largest financial stake in this litigation. Rather, FPF challenges the validity of the number itself by arguing it may reflect Citrix shares in pooled investment vehicles held by MPSB's "several companies which act as their investing entities." However, the fact that these "several companies" might conceivably own additional Citrix shares through pooled investment entities is irrelevant to the issue of whether MPSB has the largest financial interest. As reflected in McCormick's affidavits, the identified 151,994 Citrix shares of MPSB constitute shares directly owned by MPSB and "do not include any Citrix shares owned by pooled funds or other investing entities." MPSB Reply, at 5 (citing Second McCormick Decl. (DE [47-2], at 4)). Accordingly, there is no doubt that MPSB has the largest financial stake in this litigation.

### B. Rule 23 Typicality and Adequacy

FPF challenges MPSB's ability to satisfy Rule 23 through the same arguments used to challenge MPSB's financial stake in the action. FPF reiterates that MPSB has failed to show it is the beneficial owner of the Citrix shares at issue because some of its investments are held by separately owned investment entities, which could conceivably contain Citrix shares in a pooled investment vehicle. *See* FPF Opposition, at 12. FPF argues that any potential Citrix losses in these pooled investment vehicles held by these "several companies" owned by MPSB would be too indirect to constitute "injury-in-fact." *See* FPF Reply, at 3. Thus, according to FPF, this presents a risk that MPSB will not be

able to prove Rule 23 typicality and adequacy at the class certification stage.

MPSB responds by asserting that it has, in fact, proven its beneficial ownership of the Citrix shares identified in its Certification. *See* MPSB Reply, at 3–4. Moreover, according to MPSB, FPF's contention that MPSB's "several companies" may hold unidentified Citrix shares through pooled investment vehicles is speculative and not supported by the record. MPSB further states that "federal courts overseeing PSLRA litigation have repeatedly found that [MPSB] . . . satisfy[ies] the PSLRA and Rule 23's requirements and have not identified any concerns regarding [MPSB's] structure or nature of their investments." *Id.* at 5–6.

"To earn the presumption of being the most adequate lead plaintiff, [a plaintiff] must also make a 'sufficient preliminary showing' that he satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23." *Short Squeeze Trading*, 2021 WL 4840857, at *3 (citation omitted). To meet the typicality requirement, a plaintiff must possess the "same essential characteristics as the claims of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (cleaned up). The claims and facts need not be identical, rather, "[a] sufficient nexus is established if the claims or defenses of the class and the [proposed lead plaintiff] arise from the same event or pattern or practice and are based on the same legal theory." *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018). To satisfy the adequacy requirement, (1) there must not be any "substantial conflicts of interest [] between the [presumptive lead plaintiff] and the class," and (2) the presumptive lead plaintiff must "adequately prosecute the action." *Phillips v. Churchill Cap. Corp. IV*, 2021 WL 4220358, at *3 (N.D. Ala. Sept. 16, 2021).

MPSB has made a sufficient preliminary showing of typicality and adequacy. First,

like other putative class members, MPSB purchased shares of Citrix common stock between January 22, 2020 and October 6, 2021 (the "Class Period"). MPSB, like other putative class members, owned these shares when Citrix is alleged to have made false and misleading statements and failed to disclose material facts regarding Citrix's cloud product. And MPSB, like other putative class members, suffered damages in the form of a significant decline in Citrix stock value. Second, MPSB is an experienced institutional investor with a large financial interest in this action. MPSB has demonstrated that it is willing to serve as lead plaintiff, vigorously prosecute this action, and has selected counsel with substantial securities litigation experience. Finally, there is no reason to believe MPSB's interests are opposed to those of other putative class members. Therefore, the Court finds MPSB is the presumptive most adequate lead plaintiff.

### C. Rebutting the Presumption

To rebut the presumption, FPF has the burden to present "proof" that MPSB (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[M]ere speculation . . . is insufficient to challenge adequacy." *January 2021 Short Squeeze*, 2021 WL 4840857, at *5; *see Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004) (rejecting inadequacy argument where competing movant "provided no proof" and offered "only speculation").

FPF's entire argument is based on speculation regarding whether MPSB's "several companies which act as their investing entities" *might* hold shares of Citrix. According to FPF, this presents a *potential* standing problem since any Citrix shares held by these "several companies" would be indirectly, and not directly, owned by MPSB, preventing a showing of "injury-in-fact." Yet FPF's argument rests entirely on speculation. FPF has

6

presented no proof that MPSB's "several companies" hold any Citrix shares or hold pooled investment vehicles containing Citrix shares. And FPF completely ignores the fact that MPSB has clearly shown that its reported financial interest only accounts for directly held Citrix stock.[2] *See* MPSB Reply, at 5 (citing McCormick Decl. (DE [47-2], at 4) ("The Citrix shares identified on the Certification Schedule A do not include any Citrix shares owned by pooled funds or other investing entities.")). FPF has the burden to present this proof to rebut the presumption and has failed to do so. Accordingly, because FPF cannot rebut the presumption, the Court finds MPSB is the most adequate Plaintiff.

### D. Selection of Lead Counsel

Under 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." MPSB has selected Robbins Geller to serve as Lead Counsel. *See* MPSB Motion, at 8–9. Robbins Geller possesses significant experience in litigating complex securities actions, having been appointed to lead counsel roles in hundreds of securities class actions. *Id.* Robbins Geller has obtained the largest securities fraud class action recoveries in this Circuit, as well as the Fifth, Sixth, Seventh, Eighth, and Tenth Circuits. *Id.* Federal courts have consistently found Robbins Geller to be highly experienced and qualified to litigate complex securities litigations. *See id.* Accordingly, the Court finds that Robbins Geller is superbly qualified to serve as Lead Counsel and approves MPSB's selection.[3]

Accordingly, it is hereby

---

[2] Part of FPF's argument is that MPSB could have potentially gained by the decline of Citrix stock price, if any shares owned by pooled funds or other investing entities were, for example, shorted. Thus, FPF argues, setting the MPSB loss amount in the $5.5-5.7 million range is premature. FPF argues that if this is true, by the time it is discovered it will be too late, or too deep in the litigation. The Court views this as a very creative but speculative argument.

[3] FPF's selection of counsel would also have been superbly qualified in this role.

**ORDERED AND ADJUDGED** that

1. Proposed Lead Plaintiff Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (DE [18]) is **GRANTED**.

2. Proposed Lead Plaintiff Florida Pension Funds' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (DE [17]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 28th day of February 2022.

```
                         _____
                         RAAG SINGHAL
                         UNITED STATES DISTRICT JUDGE
```

Copies furnished counsel via CM/ECF